Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAYMOND BONILLA,<br><br>*Plaintiff*,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>*Defendant*. | Civil No.: 19-0291 (ES)<br><br>OPINION |

**Katharine S. Hayden, U.S.D.J.**

### I. Introduction

Plaintiff Raymond Bonilla appeals the decision of the Commissioner of Social Security denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381, *et seq.* (*See* D.E. No. 1.) The Court affirms.

### II. Background

On July 2, 2015, Bonilla filed an application for SSI. (D.E. No. 11, Administrative Record ("R.") at 212.) He claimed disability as a result of asthma, high blood pressure, HIV, diabetes, and "right hand partial amputation status/post reconstruction." (*Id.* at 18, 105, 113.) Bonilla's application was denied initially and on reconsideration. (*Id.* at 105, 113.) On January 19, 2017, an Administrative Law Judge

("ALJ") held a hearing, which was adjourned for Bonilla to obtain additional medical evidence. (*Id.* at 78–104.) On July 31, 2017, the ALJ held a second hearing, at which Bonilla and vocational expert Mary Anderson testified. (*Id.* at 33–77.)

On November 1, 2017, the ALJ denied Bonilla SSI. (*Id.* at 12–32.) The ALJ ruled that Bonilla has the residual functional capacity ("RFC") to perform work for which there exists a significant number of jobs in the national economy. (*Id.* at 20–28.) More specifically, the ALJ determined that Bonilla has the RFC

> to perform light work as defined in [20 C.F.R. § 416.967(b)] except he can frequently climb ramps, occasionally climb stairs, stoop, kneel, crouch, balance and crawl, and never climb ladders, ropes, or scaffolds. He can have no exposure to extremes in environmental conditions, *e.g.*, extreme heat, extreme cold, and humidity, or concentrated pulmonary irritants. He can *frequently reach and handle with the dominant right* (without limitation of the left hand).

(*Id.* at 20 (emphasis added).) Relying on vocational expert Anderson's testimony, the ALJ found that an individual with the above RFC could perform work as: (i) a routing clerk (96,000 jobs in the national economy); (ii) a storage facility rental clerk (88,000 jobs in the national economy); and (iii) an information clerk (28,000 jobs in the national economy). (*Id.* at 27–28, 66–67.) On November 13, 2018, the Appeals Council denied Bonilla's request for review. (*Id.* at 1–8.)

Bonilla then filed the instant appeal, which the court has subject-matter jurisdiction to decide under 42 U.S.C. §§ 1383(c)(3) and 405(g). Bonilla assigns one error to the ALJ's decision. He argues that the ALJ was without substantial evidence in finding he can *frequently*—rather than occasionally—reach and handle with his right

2

hand. (D.E. No. 21 ("Pl.'s Mov. Br.") at 13.) That finding is significant, Bonilla points out, because vocational expert Anderson testified there were no jobs in the national economy for an individual with (i) Bonilla's RFC and (ii) the additional limitation that such individual could only *occasionally* handle and finger with the dominant right hand. (*Id.* at 13–15; *see also* R. at 67–68.) The Commissioner opposes, arguing that substantial evidence supports the ALJ's RFC determination. (D.E. No. 21 ("Comm'r Opp. Br.") at 10.)

### III. Legal Standard

The Court "exercise[s] plenary review over legal conclusions reached by the Commissioner." *Chandler v. Comm'r of Soc. Sec. Admin.*, 667 F.3d 356, 359 (3d Cir. 2011). But the "findings of the Commissioner . . . as to any fact, *if supported by substantial evidence*, shall be conclusive." 42 U.S.C. § 405(g) (emphasis added). As a term of art used throughout administrative law, the term "substantial evidence" may vary depending on the context. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In this context, "the threshold for such evidentiary sufficiency is not high." *Id.* Importantly, the substantial evidence standard does not give rise to categorical rules but rather depends on a "case-by-case" inquiry. *Id.* at 1157. "Substantial evidence" is at least more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *accord Biestek*, 139 S. Ct. at 1154. And although substantial evidence requires "more than

3

a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec. Admin.*, 370 F.3d 357, 360 (3d Cir. 2004). Substantial evidence may exist, and the Court must affirm, "even if [the Court] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec. Admin.*, 186 F. App'x 280, 284 (3d Cir. 2006). The Court cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

**IV.   Discussion**

As noted, the issue on appeal is whether substantial evidence supports the ALJ's finding that Bonilla can frequently handle and finger with his dominant right hand. The Court finds there is.

Bonilla injured his right hand while incarcerated during a workplace accident when a bottling machine crushed his right middle finger, causing a near-total amputation and requiring reattachment through emergency surgery. (R. at 711–12.) The ALJ acknowledged Bonilla's testimony regarding his pain levels and the limiting effects of the injury to his right hand, and acknowledged that Bonilla's experience while incarcerated was traumatic and brought about a great deal of pain for some time. (*Id.* at 21–22.) However, the ALJ found that "the record as a whole fails to establish pain

4

or weakness to the extent claimed in his testimony, or dysfunction precluding use of a computer . . . , as his ability to use his dominant, right hand has apparently improved considerably since the initial injury." (*Id.* at 22.) In support of that conclusion, the ALJ cited record evidence demonstrating that treatment while incarcerated brought significant improvement to his pain and mobility. (*Id.*) And, the ALJ emphasized, after being released, Bonilla's right middle finger appeared not to present much of an issue for him. In support of that finding, the ALJ relied on two reports prepared by Dr. Rambhai Patel, M.D., who performed consultative examinations of Bonilla on July 21, 2015, and March 20, 2017; and the treatment notes of Dr. Sukhjender Goraya, M.D., who treated Bonilla several times between August 26, 2016, and February 2, 2017. (*Id.* at 22–23.) In his July 21, 2015 report, Dr. Patel stated that Bonilla "can do both fine and gross movement in both hands and the grip was normal." (*Id.* at 630.) In treating Bonilla several times between August 26, 2016 and February 2, 2017, Dr. Goraya hardly mentioned Bonilla's right hand. (*Id.* at 661–701.) For example, in a physical exam on August 26, 2016, Dr. Goraya listed several conditions Bonilla complained about, yet Bonilla's right hand was not one of them; and he wrote that Bonilla denied having any musculoskeletal issues and displayed full muscle strength in all muscle groups tested. (*Id.* at 662.) Finally, Dr. Patel's March 20, 2017 report stated that Bonilla's right middle finger "was slightly swollen from the previous cut," and that his grip strength was "slight[ly] diminished"—"grade was 3-4/5." (*Id.* at 704.) Dr. Patel further opined that Bonilla could frequently handle, finger, feel, push, and pull with his right hand. (*Id.* at

5

707.)

Bonilla raises three arguments why the ALJ's conclusion—which was based on the above—was not supported by substantial evidence.

First, Bonilla points out that two of the ALJ's assertions—specifically, that Bonilla "was able to regain a fair amount of grip strength and joint mobility by the time he was released from incarceration," and that "physical therapy records completed in October and November 2014 show the claimant was working through his pain and experiencing good results from treatment, which included unrestricted progressive range of motion exercises and grip strengthening" (*id.* at 22)—are not supported by the specific record citations offered by the ALJ. (Pl.'s Mov. Br. at 17–18.) Even so, Bonilla has made no argument how the ALJ's citation errors changed the outcome. *See Shinseki v. Sanders*, 556 U.S. 396, 408 (2009); *Ruszala v. Comm'r of Soc. Sec. Admin.*, No. CV 19-16556, 2020 WL 6738161, at *2 (D.N.J. Nov. 17, 2020) (Chesler, J.) ("Plaintiff thus bears the burden, on appeal, of showing not merely that the Commissioner erred, but also that the error was harmful."). Moreover, the record is replete with support, as cited by the ALJ elsewhere in his decision, for those assertions—more specifically, that Bonilla's pain levels were controlled with Motrin, that he could better flex and extend his right middle finger as a result of treatment, and that his grip strength in his right hand had improved prior to his release from incarceration. (R. at 22–23.)

Second, Bonilla argues that the ALJ's finding that his right hand improved is not supported by substantial evidence but rather a lack of evidence. (Pl.'s Mov. Br. at 20–

6

21.) The ALJ, Bonilla goes on, erred in relying on the fact that Drs. Patel and Goraya omitted discussion of Bonilla's right hand from their reports and treatment notes. (*Id.*) But that is not all the ALJ relied on. For one, the ALJ cited Dr. Patel's assessment that Bonilla's grip strength was only slightly diminished. For another, in addition to relying on evidence showing that Bonilla's condition improved, the ALJ cited Drs. Patel and Goraya as the absence of evidence corroborating Bonilla's claims regarding the debilitating effects of his right middle finger. *See Hock v. Comm'r Soc. Sec. Admin.*, 646 F. App'x 171, 174 (3d Cir. 2016) ("In addition to relying on evidence that Ms. Hock independently performed many activities of daily living, such as running errands outside her house, babysitting, and answering phones at her father's shop, the ALJ relied on the absence of evidence in the record to corroborate the more severe limitations to which Ms. Hock testified."). That was perfectly appropriate. As the Commissioner points out, it is Bonilla's burden to produce evidence of his disability and its severity. (Comm'r Opp. Br. at 21 (citing 20 C.F.R § 416.912).) *See also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Doss v. Comm'r of Soc. Sec.*, No. 19-18139, 2020 WL 5036199, at *1 (D.N.J. Aug. 26, 2020) (Chesler, J.).

Third, Bonilla argues that there is no evidence he *can* frequently handle. (Pl.'s Mov. Br. at 22.) But as with Bonilla's previous argument, this argument inverts the burden of proof. It was Bonilla's burden to show he cannot frequently handle, not the Commissioner's burden to show he can.

7

**V.** **Conclusion**

For the foregoing reasons, the Court affirms the decision of the Commissioner. An appropriate order will follow.

Dated: March 1, 2021

*/s/Katharine S. Hayden*
Katharine S. Hayden, U.S.D.J.